Miscellaneous Docket No. _____

# United States Court of Appeals
# for the Federal Circuit

IN RE NEWEGG INC.,

Petitioner.

On Petition for a Writ of Mandamus to the United States District Court for the
Eastern District of Texas in Case No. 2:11-cv-00248, Judge Rodney Gilstrap

## PETITION FOR WRIT OF MANDAMUS

Kent. E. Baldauf, Jr.
Daniel H. Brean
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

Mark. A. Lemley
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Edward R. Reines
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Counsel for Newegg Inc.*

July 6, 2015

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

In re Newegg, 2015-_____

## <u>CERTIFICATE OF INTEREST FOR NEWEGG INC.</u>

Counsel for Newegg Inc. hereby certifies the following:

1.    The full name of every party or amicus represented by me is:

 Newegg Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

 Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

 No publicly held company owns ten percent or more stock in Newegg Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

 Kent E. Baldauf, Jr., The Webb Law Firm
 James J. Bosco, Jr., The Webb Law Firm
 Daniel H. Brean, The Webb Law Firm
 Anthony W. Brooks, The Webb Law Firm
 Bryan P. Clark, The Webb Law Firm
 Herbert A Yarbrough, III, Yarbrough Wilcox, PLLC
 Debra Elaine Gunter, Findlay Craft, PC
 Edward R. Reines, Weil Gotshal & Manges, LLP
 Alan D. Albright, Bracewell & Guiliani LLP
 Mark A. Lemley, Durie Tangri LLP
 Edward R. Reines, Weil Gotshal & Manges LLP

Dated:  July 6, 2015

/s/ *Daniel H. Brean*_____
Daniel H. Brean
*Counsel for Newegg Inc.*

# TABLE OF CONTENTS

**CERTIFICATE OF INTEREST FOR NEWEGG INC.** ..................................... i

**TABLE OF CONTENTS** .................................................................................. ii

**TABLE OF AUTHORITIES** ........................................................................... iii

**RELIEF SOUGHT** ...........................................................................................1

**ISSUE PRESENTED** .......................................................................................1

**PRELIMINARY STATEMENT** .......................................................................1

**STATEMENT OF RELEVANT FACTS** ..........................................................3

    I.   THE PARTIES...............................................................................................3

    II.   THE DISTRICT COURT PROCEEDINGS..............................................................4

    III.   THE '730 PATENT AND TQP'S INFRINGEMENT CONTENTIONS.......................8

    IV.   THE INTUIT SUMMARY JUDGMENT DECISIONS .............................................11

**LEGAL STANDARDS** ..................................................................................13

**REASONS WHY THE WRIT SHOULD ISSUE** .............................................14

    I.   NEWEGG HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF.................14

    II.   NEWEGG IS CLEARLY AND INDISPUTABLY ENTITLED TO JUDGMENT OF NON-INFRINGEMENT .............................................................................................19

    III.   ISSUANCE OF THE WRIT IS APPROPRIATE.....................................................25

**CONCLUSION**...............................................................................................27

**CERTIFICATE OF SERVICE** .......................................................................28

# TABLE OF AUTHORITIES

## *CASES*

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008) ............................................................................22

*Cassidian Comms., Inc. v. microDATA GIS, Inc.*,
    No. 2:12-cv-00162-JRG (E.D. Tex.) ....................................................................17

*Cheney v. United States Dist. Court for the Dist. of Columbia*,
    542 U.S. 367 (2004) ...................................................................................... 13, 14

*Chudasama v. Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997) ............................................................................25

*Church of Scientology v. United States Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979) ................................................................................24

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ..............................................................................................24

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
    192 F.3d 973 (Fed. Cir. 1999) ...................................................................... 13, 20

*Google Inc. v. Beneficial Innovations, Inc.*,
    No. 2:11-cv-00229-JRG (E.D. Tex.) ....................................................................17

*Hampton v. Nicholson*,
    175 Fed. Appx. 334 (Fed. Cir. 2006) ...................................................................13

*Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*,
    No. 2:10-cv-260-JRG (E.D. Tex.) ........................................................................17

*In re Apple Inc.*,
    456 Fed. Appx. 907 (Fed. Cir. 2012) ...................................................................15

*In re EMC Corp.*,
    501 Fed. Appx. 973 (Fed. Cir. 2013) ...................................................................15

*In re Federal Computer Corp.*, Misc. Dkt. No. 307,
   1991 U.S. App. LEXIS 31719 (Fed. Cir. June 19, 1991) ...................................26

*In re Google Inc.*,
   588 Fed. Appx. 988 (Fed. Cir. 2014) ...................................................24

*In re Monroe Communications Corp.*,
   840 F.2d 942 (D.C. Cir. 1988) ...........................................................26

*In re Nintendo Co.*,
   544 Fed. Appx. 934 (Fed. Cir. 2013) ...................................................15

*In re Princo Corp.*,
   478 F.3d 1345 (Fed. Cir. 2007) ..........................................................21

*In re School Asbestos Litigation*,
   977 F.2d 764 (3d Cir. 1992) ..............................................................25

*In re TS Tech United States Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ............................................. 13, 14, 21

*Jackson v. Shinseki*,
   338 Fed. Appx. 898 (Fed. Cir. 2009) ...................................................14

*La Buy v. Howes Leather Co.*,
   352 U.S. 249 (1957) .........................................................................26

*Reese v. Verizon Cal., Inc.*,
   498 Fed. Appx. 980 (Fed. Cir. 2012) ....................................... 22, 23

*Ribaudo v. Nicholson*,
   20 Vet. App. 552 (2007).....................................................................14

*SimpleAir, Inc. v. Google Inc.*,
   Nos. 2:13-cv-00587-JRG and 2:11-cv-00416-JRG (E.D. Tex.) ................... 17, 18

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
   778 F.3d 1311 (Fed. Cir. 2015) ...........................................................23

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*,
   751 F.3d 684 (5th Cir. 2014)..............................................................23

*TQP Development, LLC v. 1-800-Flowers et al.*,
   No. 2:11-cv-00248-JRG (E.D. Tex.) ....................................................................7

*TQP Development, LLC v. American Eagle Outfitters, Inc.*,
   No. 2:14-cv-00565-JRG (E.D. Tex.) ...................................................................8

*TQP Development, LLC v. Intuit, Inc.*,
   No. 2:12-cv-00180-WCB (E.D. Tex) ...................................................... 5, 11, 23

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010) .................................................................. 22, 23

*United States v. Newman*,
   456 F.2d 668 (3d Cir. 1972) .............................................................................25

*Wi-Lan Inc. v. HTC Corp.*,
   No. 2:11-cv-00068-JRG (E.D. Tex.) .................................................................17

*Will v. Calvert Fire Ins. Co.*,
   437 U.S. 655 (1978) ................................................................................. 14, 21

## STATUTES

28 U.S.C. § 1651(a) ..................................................................................... 13, 25

## RULES

Federal Rule of Civil Procedure 50(a) ......................................................................4

Federal Rule of Civil Procedure 50(b) .....................................................................4

## OTHER AUTHORITIES

Christian E. Mammen, *Technical Detail in Senate PATENT Act
Could Have Major Impact in Eastern District of Texas Patent Litigation*,
PatentlyO, *available at:* http://patentlyo.com/patent/2015/06/technical-district-
litigation.html (June 11, 2015) ..............................................................................16

## RELIEF SOUGHT

Newegg Inc. ("Newegg") respectfully petitions for a writ of mandamus directing the United States District Court for the Eastern District of Texas to enter judgment that Newegg does not infringe U.S. Patent No. 5,412,730 ("the '730 Patent") as a matter of law.

## ISSUE PRESENTED

Whether the district court's 20-month failure to resolve Newegg's motion for judgment as a matter of law has prejudicially deprived Newegg of relief to which Newegg is indisputably entitled, warranting a writ of mandamus to enter judgment in favor of Newegg.

## PRELIMINARY STATEMENT

This Petition involves a case tried in November 2013 that still has not reached any appealable judgment. Although the jury found infringement and awarded $2.3 million in damages to TQP Development, LLC ("TQP"), it is beyond any reasonable debate that Newegg does not infringe the asserted claims, and Newegg sought appropriate post-trial relief on that basis. In the absence of a judgment, however, Newegg has been unduly burdened with an untenable $2.3 million liability on its books for *20 months* and counting, which prejudices Newegg's ability to make business decisions regarding that considerable sum.

Newegg has respectfully encouraged the district court to decide Newegg's motion for judgment as a matter of law no fewer than four times, and has communicated the prejudice caused by the delay.  It is now approaching two years after trial and no action has been taken by the district court on Newegg's motion. This is several times longer than the time it has taken most other patent cases, tried before the same judge and around the same time, to reach final judgments.  With no appealable judgment, and none ostensibly forthcoming, Newegg has no realistic recourse aside from seeking a writ of mandamus.

Newegg's right to a judgment of non-infringement in this instance is truly indisputable and warrants the exceptional relief of mandamus.  The asserted claims require data to be encrypted and transmitted one block at a time, but Newegg's system undisputedly encrypts and transmits many blocks of data en masse. Although being well outside the literal requirements of the claims like this is not always sufficient, it is completely dispositive in this case because TQP was barred by prosecution history estoppel from arguing any doctrine-of-equivalents theory. No reasonable jury could have found infringement under these circumstances.

Moreover, in a closely related case brought by TQP asserting the same patent and the same claims against Intuit, Inc., Judge Bryson of this Court (sitting by designation) granted Intuit summary judgment of non-infringement on the same grounds Newegg argued.  Judge Bryson's ruling applied to Intuit's accused

systems that were identical to Newegg's, was based on testimony from the Newegg trial, and was made under a claim construction slightly *broader* (and thus more favorable to TQP) than the one given in Newegg's case. Although Newegg was already entitled to judgment of non-infringement prior to Judge Bryson's ruling, the force of collateral estoppel from the ruling further vindicates Newegg's positions. This is not to mention the principles of comity that strongly encourage deference by Judge Gilstrap to Judge Bryson's prior ruling on the exact same issue.

Given the clarity and simplicity of the merits issues that conclusively establish that Newegg does not infringe, and especially in light of Judge Bryson's decisions, 20 months is far, far too long to wait for a judgment to expunge the $2.3 million of liability that the jury unduly found. Newegg respectfully urges this Court to issue a writ of mandamus and grant Newegg the relief to which it is entitled. Newegg cannot achieve this relief through the ordinary appellate process due to the district court's excessive and unreasonable delay.

## STATEMENT OF RELEVANT FACTS

### I. THE PARTIES

Newegg is a specialty retailer of computers, computer parts, and electronics that conducts most of its business through its website, www.newegg.com.

TQP is a shell corporation formed for the purpose of owning and monetizing the '730 Patent through actual and threatened litigation.

## II.    THE DISTRICT COURT PROCEEDINGS

TQP sued Newegg for infringement in May 2011. A0004. TQP accused aspects of Newegg's website systems that allow for secure, encrypted communications of sensitive data (e.g., credit card numbers).

A six-day trial was held November 18-26, 2013. A0032-33. Before the case was submitted to the jury, Newegg moved for judgment as a matter of law ("JMOL") of non-infringement under Rule 50(a), but the district court denied Newegg's motion and submitted the issue to the jury. A0032-33.

The jury found that Newegg infringed claims 1, 6, 8, and 9 of the '730 Patent, and awarded TQP damages in the amount of $2.3 million. A0001-03. Newegg then added, as it must, the $2.3 million verdict to the liabilities on its corporate books.

After the district court failed to enter judgment on the verdict for three months, on February 17, 2014, Newegg proceeded to file a renewed motion seeking, *inter alia*, JMOL of non-infringement under Rule 50(b). A0058-60. As explained further below, Newegg's motion demonstrated that infringement could not possibly lie where the claims require that "a new key value . . . is used" to encrypt new blocks of data only *after* the previously encrypted blocks "have been sent" from the transmitter to the receiver (A0180), and where Newegg's accused system undisputedly uses new key values *before* transmission of the previously

encrypted blocks has occurred.  A0069-74 (explaining that TQP's infringement theory requires *each* block of data to be encrypted *and transmitted* before the next block of data is encrypted, while Newegg's system encrypts *many* blocks of data at a time and transmits them en masse).  Particularly where TQP's own expert unambiguously agreed that Newegg's system worked in the opposite manner of the claims, and where TQP was barred from advancing any equivalents theory of infringement, no reasonable fact finder could have reached the verdict that this jury did. *Id.*

After briefing was completed on the JMOL motion, in April 2014 Newegg submitted a request for an oral hearing, suggesting that a hearing could assist "the Court in resolving the numerous issues presented in the motions." A0153.  The district court took no action.

Two months later, in June 2014, Judge Bryson of this Court, sitting by designation in the Eastern District of Texas, issued a ruling in the related case, *TQP Development, LLC v. Intuit, Inc.*, No. 2:12-cv-00180-WCB ("the Intuit Case").  That ruling granted summary judgment of non-infringement to Intuit of the *same patent*, based on the *same claim requirement*, applied to *identical accused systems* as were involved in the Newegg case.  A0233-39; A0233 n.3.  Judge Bryson even relied on TQP's expert's testimony in *Newegg's* trial as proof that *Intuit's* accused system could not infringe as a matter of law.  A0233-36.

Newegg immediately brought Judge Bryson's decision to the attention of the district court as being "dispositive of Newegg's post-trial motions." A0142-46. The district court still took no action on Newegg's motion.

A month later, in July 2014, Judge Bryson denied TQP's motion to reconsider the summary judgment ruling. A0240. Newegg again immediately brought this decision to the attention of the district court, explaining how it "warrants entry of [JMOL] or non-infringement." A0149-50. The district court still took no action on Newegg's JMOL motion.

After no action was taken by the district court on Newegg's motion for another four months, Newegg submitted a renewed request for oral argument in November 2014. A0156-57. This time, Newegg not only reiterated that such argument might be helpful to the district court to resolve the post-trial motions, but informed the district court of the substantial harm resulting from the sizable $2.3 million verdict that remained on Newegg's books for the entire year that had then passed since the trial. *Id.*

As Newegg explained, the uncertainty caused by the continued delay in bringing the case to judgment seriously hinders Newegg's ability to make business decisions with respect to the $2.3 million liability. A $2.3 million contingent liability is equivalent to dozens of full-time salaries and employment opportunities lost, and represents many substantial business opportunities that Newegg cannot

take.  For instance, that sum in 2015 alone would have allowed Newegg to expand its work force, conduct research and development, acquire a small business, build or lease an additional warehouse, offer more free shipping and lower prices to its customers, or take any number of other measures to enhance Newegg's business in the highly competitive online retail market.

Further, Newegg explained to the district court that "with TQP being a patent assertion entity and not an operating company, delay of judgment increases the likelihood that TQP will disperse its funds and assets, which may prevent Newegg from recovering fees or costs from TQP in the event that Newegg ultimately prevails in this case."  A0156-57 (citing examples of having been in similar situations in the past, including Newegg's inability to collect costs in the amount of $28,304.80 from Kelora Systems, LLC due to Kelora's bankruptcy filing). Indeed, the ownership and management of TQP and its patent may have already changed.[1]  Still, the district court took no action.

---

[1]  SEC filings show that TQP tried to sell itself and the '730 Patent to Marathon Patent Group, Inc. in May 2013, only months before the trial between TQP and Newegg, but that the deal never consummated.  *See* http://www.sec.gov/Archives/edgar/data/1507605/000152153613000697/q110121 3_10q-marathon.htm (last visited June 15, 2015).  Newegg would not be privy to subsequent sales efforts with non-public companies, but PACER records show that five months after the Newegg trial, TQP filed several more lawsuits asserting the '730 Patent, suddenly represented by entirely different counsel.  *Compare TQP Development, LLC v. 1-800-Flowers et al.*, No. 2:11-cv-00248-JRG, ECF No. 1 (May 6, 2011 complaint filed by Spangler Law PC; Russ August & Kabat; and Ni Law Firm, PLLC against Newegg) *with, e.g., TQP Development, LLC v. American*

It has now been 20 months since Newegg went to trial against TQP. That is nearly two years of unnecessary and unduly burdensome business uncertainty with respect to a substantial $2.3 million liability that the district court should have extinguished long ago.

## III. THE '730 PATENT AND TQP'S INFRINGEMENT CONTENTIONS

The '730 Patent is generally directed to a method for encrypting, transmitting, and decrypting data in "blocks." '730 Patent, at Abstract, Fig. 1, & 3:5-40 (A0039-40, A0045). The patent has only a single independent claim— claim 1. As TQP's expert explained at trial, the method of claim 1 includes the use of a first and second sequence of "key values." A0381-88. These key values are used to encrypt (i.e., scramble) a block of data at the transmitter and are used to decrypt (i.e., unscramble) the block of data at the receiver. *Id.* Each key value in the first sequence that is used to encrypt a block at the transmitter must be identical to the key value in the second sequence that is used to decrypt that same block at the receiver or the encrypted data will not be decrypted correctly. *Id.*

Claim 1 requires "a new one of said key values in said first and said second sequences [to be] *produced each time a predetermined number of said blocks are **transmitted** over said link*." '730 Patent, at Claim 1 (A0050). The district court construed this language to mean "a new key value in the first and second sequence

---

*Eagle Outfitters, Inc.*, No. 2:14-cv-00565-JRG, ECF No. 1 (April 30, 2014 complaint filed by Austin Hansley PLLC).

is used *each time a predetermined number of blocks* ***have been sent from the*** ***transmitter*** over the communications link." A0180 (emphasis added). In other words, a new key value cannot be "used" for encryption of new blocks of data at the transmitter until the previously encrypted blocks "have been sent" by the transmitter. TQP never objected to this construction. Further, TQP was barred by prosecution history estoppel from asserting an equivalents theory as to this claim requirement, and only accused Newegg of literal infringement. A0262.

At trial, TQP contended that each byte of data was a "block," and that the "predetermined number of blocks" that must be sent from the transmitter to trigger the switch to a new key value was one (1). A0454-55, at 12:24-13:5; A0465, at 23:2-6. Thus, viewing TQP's contentions in light of the claim construction, the '730 patent would require a new key value to be used at the transmitter for encrypting the next byte only *after* the prior byte was encrypted *and transmitted* over the link. Put another way, for TQP to have shown this claim requirement was met, a byte of data must be encrypted and sent over the communication link before the next byte is encrypted.

TQP not only failed to prove that Newegg's system met this requirement, it conceded precisely the opposite—that Newegg's system does *not* change to a new key value after transmitting each byte. Specifically, TQP's expert admitted, using

the following demonstrative (A0139), that the one-byte "block" in Newegg's system

is *not* transmitted before the next key value is used on the next block:



Source: '730 Patent, Fig. 1 (PX1)

Q.  [I]n this animation—you show that we've got one block, the green block, and two blocks—the second block, the blue block— block, they've been encrypted already, correct?

A.  As is shown here, yes.

Q.  And they've each been encrypted using a different key value, correct?

A.  Block 1 was encrypted with a different key value than Block 2, yes.

Q.  So Block 2, the blue block, is being encrypted using a new key value *before* Block 1 has been transmitted across the communication link, correct?

A.  That's correct.

A0572, at 130:11-23 (emphasis added); *see also* A0496-97, at 54:22-55:5 (TQP's

expert admitting that multiple bytes are transmitted "all at one time" in Newegg's

accused system). TQP's expert thus openly acknowledged that, in Newegg's

system, the new key value is used to encrypt a second byte (the blue block above) *before* the previously encrypted byte (the green block above) has been sent over the communication link.

## IV.  THE *INTUIT* SUMMARY JUDGMENT DECISIONS

As a threshold matter, it is undisputed that the accused systems in the Intuit Case were "identical to the system at issue in *Newegg*."  A0233 n.3.

Although TQP never attempted to challenge the "have been sent" claim construction in the case against Newegg, it did in the Intuit Case when trying to survive summary judgment.  But Judge Bryson correctly reaffirmed the critical temporal limitations regarding the key values utilized for encrypting the blocks and the transmission of the encrypted blocks.  Judge Bryson construed the claim language as follows:

> For both the first and second sequences, at the transmitter and at the receiver respectively, a new key value is produced each time a predetermined number of blocks are transmitted over the link. The term 'produced' as used in that sentence, means 'generated' or 'supplied.' The phrase 'are transmitted' means 'are being transmitted' or 'have been transmitted.'

A0231-32; *see also* A0214-15.

This construction diverges from that in Newegg's case in two respects, both of which arguably make the construction more favorable to TQP.  First, Judge Bryson held that "produced" means "generated or supplied," as opposed to "used."  Second, Judge Bryson also replaced the "have been sent" language of Newegg's

11

construction with "are being transmitted," which he stated "does not necessarily mean that the transmission of the blocks must have been completed before the new key value is produced. The events could be occurring simultaneously or in close succession, with the transmission onto the communication link occurring after the new key value is produced." A0219.

Despite having broadened the construction in these two respects, Judge Bryson found that summary judgment of non-infringement was proper. Relying on the same testimony and demonstrative from the Newegg trial cited above, Judge Bryson explained that "TQP has shown only that key values in the accused systems change for each new block that enters the transmitter, not each time a single block is placed on the communication link by the transmitter." A0233-39. Additionally, "TQP's evidence does not show that key-value changes are tied to the number of blocks that are being transmitted at any particular moment, i.e., that the key value is changed each time the number of blocks in the transmitter reaches the predetermined number one." *Id.* Judge Bryson summarized his analysis as follows:

> [i]n the patented method, a new key value is produced each time a predetermined number of data blocks are transmitted, whereas in the accused systems a new key value is produced each time the transmitter receives a predetermined number of data blocks (one, in the case of the defendants' systems) from the data source.

A0237. Judge Bryson later denied TQP's motion for reconsideration. A0246-49.

## **LEGAL STANDARDS**

28 U.S.C. § 1651(a) gives this Court the authority to "issue all writs necessary or appropriate in aid of [its] jurisdictions and agreeable to the usages and principles of law."  The Federal Circuit has adopted a three-pronged test for granting a writ of mandamus:

> (1) the party seeking issuance of the writ must have no other adequate means to attain the relief he desires; (2) the petitioner must satisfy the burden of showing that his right to issuance of the writ is "clear and indisputable"; and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Hampton v. Nicholson*, 175 Fed. Appx. 334, 335 (Fed. Cir. 2006) (citing *Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380-81 (2004)).

It was TQP's burden at trial to prove that Newegg's website systems met all the claim requirements.  The failure to establish that the accused system meets all limitations of the claim requires entry of judgment of non-infringement as a matter of law.  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980-981 (Fed. Cir. 1999).

For substantive issues of patent law raised in this Petition, Federal Circuit law, not the law of the Fifth Circuit, governs.  *In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

## REASONS WHY THE WRIT SHOULD ISSUE

### I.    NEWEGG HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF

"[W]here a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ [of mandamus]." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-662 (1978). Put another way, delay may "give rise to a right to mandamus [if] the delay is equivalent to an arbitrary refusal to act." *Jackson v. Shinseki*, 338 Fed. Appx. 898, 901-902 (Fed. Cir. 2009) (citing *Ribaudo v. Nicholson*, 20 Vet. App. 552, 555 (2007)). The 20-month delay of judgment in this case, which is several times longer than the time to judgment for similar cases tried at similar times before the same judge, and in the face of Newegg's repeated efforts to move the case along to judgment, is tantamount to an arbitrary refusal to act that warrants issuance of a writ of mandamus.

Although litigants ordinarily must wait for a final judgment to seek relief from this Court on appeal, "the 'no other means' requirement is not intended to ensure that [a petitioner] exhaust every possible avenue of relief at the district court before seeking mandamus relief. . . . Rather, the purpose . . . is to 'ensure that the writ will not be used as a substitute for the regular appeals process.'" *TS Tech*, 551 F.3d at 1322 (quoting *Cheney*, 542 U.S. at 380-81). Here, Newegg seeks not to substitute this Petition for the ordinary appeal process, but to obtain relief to which

it is entitled *at a meaningful* and *reasonable time* in the face of excessive and prejudicial delay of judgment.

A petition for a writ of mandamus may be granted based in part on delay, where the delay causes prejudice that cannot be redressed by following the ordinary appellate course. For example, if the failure of a district court to promptly stay or transfer a case effectively precludes meaningful relief (because the parties are forced to litigate in an improper forum or on a case that should be stayed), such a circumstance favors the issuance of a writ of mandamus. *See, e.g., In re Apple Inc.*, 456 Fed. Appx. 907, 908 (Fed. Cir. 2012) (suggesting that mandamus is appropriate remedy for 15-month delay in acting on motion to transfer, but denying petition because "Apple failed to employ any strategy to pressure the district court to act, such as seeking mandamus to direct the district court to rule on the motion"); *In re Nintendo Co.*, 544 Fed. Appx. 934, 941 (Fed. Cir. 2013) (citing *In re EMC Corp.*, 501 Fed. Appx. 973, 975-976 (Fed. Cir. 2013) (encouraging district courts to decide motions to transfer early so that defendants need not "partake in years of litigation prior to a determination on a transfer motion")). Yet the Eastern District of Texas "has gained a reputation for deferring rulings on venue transfer

motions until the case is substantially advanced," making such delay-based prejudices common and uniquely affecting defendants.[2]

Likewise, here the failure of the district court to act on Newegg's JMOL motion has caused two serious prejudices to Newegg: (1) 20 months of carrying an unjustifiable and uncertain $2.3 million liability on its books, which substantially hinders Newegg's ability to make business decisions with respect to that considerable sum; and (2) the ever-increasing specter of shell company TQP dissolving its corporate entity or filing for bankruptcy and leaving Newegg unable to recover fees and obtain other relief from TQP to which Newegg believes it is entitled.  This is not to mention that Newegg will, absent further action by the courts, continue to be unjustly labeled an infringer in the public record, damaging Newegg's reputation.

The failure of the district court to act while Newegg's prejudice compounds cannot be remedied by awaiting the ordinary course of a final judgment and appeal.  Nor can Newegg effectively do anything before the district court to avoid further delay.  Indeed, Newegg attempted to encourage prompt resolution of this case in the district court no fewer than four times—twice requesting an oral

---

[2] Christian E. Mammen, *Technical Detail in Senate PATENT Act Could Have Major Impact in Eastern District of Texas Patent Litigation*, PatentlyO (June 11, 2015),    *available    at*    http://patentlyo.com/patent/2015/06/technical-district-litigation.html ("According to Lex Machina, there were 33 cases in the Eastern District of Texas between January 1, 2010 and May 1, 2015 in which a venue transfer motion was pending for over a year before being ruled on . . . .").

hearing and twice submitting controlling dispositive supplemental authority—but can only do so much at the district court level to move things along. Newegg has been patient but firm, and filed the present Petition only as a last resort when no action from the district court appeared to be forthcoming 20 months after trial.

Newegg's post-trial appealable judgment has already been delayed up to *four times* longer than other patent cases that went through trial around the same time as Newegg (November 2013) before the same judge. *See, e.g., Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:10-cv-260-JRG (5 months from April 2013 trial to appealable judgment); *Wi-Lan Inc. v. HTC Corp.*, No. 2:11-cv-00068-JRG (5.5 months from October 2013 trial to appealable judgment); *Cassidian Comms., Inc. v. microDATA GIS, Inc.*, No. 2:12-cv-00162-JRG (7.5 months from December 2013 trial to appealable judgment); *Google Inc. v. Beneficial Innovations, Inc.*, No. 2:11-cv-00229-JRG (7 months from January 2014 trial to appealable judgment). Even considering the time from the close of post-trial briefing to judgment, the delay in Newegg's case is still excessive— while Newegg has been waiting 15 months since briefing closed on its JMOL motion, the cases cited in the preceding sentence received judgments only two to five months after post-trial briefing closed.[3] All told, data pulled from Lex

---

[3] One case after Newegg's that was bifurcated into two separate trials (January 2014 and March 2014) still reached final judgment in less than half the time that Newegg's has taken. *See SimpleAir, Inc. v. Google Inc.*, Nos. 2:13-cv-00587-JRG

Machina shows that Newegg's case has been pending longer than 98.8% of cases filed before the same judge. Newegg's case has taken far, far too long to reach an appealable final judgment.

Further evidencing the unreasonableness of the delay in Newegg's case is the most recent Civil Justice Reform Act ("CJRA") Report for Judge Gilstrap, which indicates that as of September 30, 2014, Judge Gilstrap had only a single civil case pending for more than three years, and that he had no motions pending for more than six months. A0850-51; A0805. The CJRA Report further indicates that Judge Gilstrap had no bench trials submitted over six months and no bankruptcy or social security appeals pending more than six months. A0852-54; A0805. For a docket that, while very busy, seems remarkably efficient based on the CJRA Report, it is especially surprising and disappointing to Newegg that its motion has yet to be resolved.[4]

---

and 2:11-cv-00416-JRG (9 months from second trial to December 2014 judgment). And despite the multiple rounds of post-trial briefing, that case only took 5 months from the close of briefing to reach final judgment. *Id.*

[4] Curiously, although TQP's case against Newegg (filed May 6, 2011) had been pending for more than three years, and although Newegg's JMOL motion (filed February 17, 2014) had been pending more than six months at that time, neither the case nor the motion were listed in Judge Gilstrap's September 2014 CJRA Report. *See* A0842-43 (explaining that a case is deemed "pending" as of the date it was originally filed, and that a motion is deemed "pending" 30 days after it is filed).

**II.    NEWEGG IS CLEARLY AND INDISPUTABLY ENTITLED TO JUDGMENT OF NON-INFRINGEMENT**

No reasonable jury could possibly have found that Newegg's system—which uses a new key value to encrypt each block of data *before* any transmission of the data occurs—meets the claim requirement that each key value is "used" when the previous encrypted block "ha[s] been sent" from the transmitter. A0180. TQP's own expert at trial admitted, with reference to the demonstrative above, that in Newegg's system "Block 2, the blue block, is being encrypted using a new key value *before* Block 1 has been transmitted across the communication link." A0572, at 130:11-23 (emphasis added); *see also* A0496-97, at 54:22-55:5. This alone avoids infringement, especially where TQP advanced only a theory of literal infringement for this claim requirement.

At trial, TQP's expert's unpersuasive response was that this order-of-steps requirement of the claim refers to actions occurring exclusively at the receiver, and not at the transmitter. *See, e.g.,* A0565-66. But by the plain text of the claim, the "have been sent" requirement must apply to *both* the first sequence in the transmitter and the second sequence in the receiver: "a new one of said key values *in said first and said second sequences* being produced each time a predetermined number of said blocks are transmitted over said link." '730 Patent, at Claim 1 (A0050). Claim 1 expressly defines the "first sequence" of key values as a sequence of key values on the *transmitter* side. *Id.* ("generating a *first sequence* of pseudo-random key values

19

based on said seed value *at said transmitter*").  Only the *second* sequence is at the receiver side.  Thus, the new key values are undeniably required to be used at *both* the transmitter and the receiver *after* a predetermined number of blocks have been sent over the communication link.  Indeed, Judge Bryson expressly rejected TQP's argument to the contrary, holding that "the key values that are generated at the transmitter and the key values that are generated at the receiver are *both* produced each time the predetermined number of blocks is transmitted over the communication link."  A0206 (emphasis added) (explaining that "the plain language of the limitation refers to both the first sequence of pseudo-random key values (which is associated with the transmitter) and the second sequence of pseudo-random key values (which is associated with the receiver)").

Because the parties agree that Newegg's system does *not* change key values at the transmitter based on the transmission of blocks,[5] and because the claim requirements exclude such a system, Newegg is entitled to JMOL of non-infringement.  *Elkay*, 192 F.3d at 980-981 (reversing denial of JMOL where the claims required "a single feed tube/probe with a single flow path for both liquid

---

[5] Newegg's technical expert, Dr. Stubblebine, confirmed non-infringement by examining the same demonstrative slide prepared by Dr. Jaeger shown above. A0625, at 32:17-25 ("The Court's construction says that new key value in the first and second sequence is used each time a predetermined number of blocks have been sent from the transmitter over the communication link.  And what Dr. Jaeger was accusing as that predetermined number is one block. And so one block has got to be sent before you use the next key to encrypt the next block, and that's not what's going on.").

and air," "[t]here is no dispute that the WaterGuard devices use separate feed tubes for water and air").

This is not "a matter committed to the district court's discretion," such as a routine decision to stay a case, where it is problematic to suggest that that the right to relief one way or the other is "clear and indisputable." *Will*, 437 U.S. at 665-66 (affirming district court's discretion to stay case in light of parallel state court proceedings). Rather, this is a situation where a ruling denying Newegg judgment as a matter of law would constitute "a clear abuse of discretion or usurpation of judicial power." *E.g., TS Tech*, 551 F.3d at 1318, 1321 (ordering district court to transfer case because "denying transfer from a venue with no meaningful ties to the case" was a "patently erroneous result"); *cf. In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) (ordering district court to issue stay because statute clearly required continued stay until ITC proceeding was "final"). The law is clear, the claim requirements are clear, and the facts are clear and undisputed. Newegg does not infringe as a matter of law.

Even under Judge Bryson's somewhat more generous claim construction than the one adopted in this case without TQP's objection, Newegg's system still does not meet the claim requirements. As Judge Bryson explained when denying TQP's request for reconsideration, the claims require more than "each block get[ting] a new key value"—they require "a new key value [to be] produced 'each

time' a single block is being transmitted or a single block has been transmitted."

A0249. If Intuit's system (which is admittedly identical to Newegg's, A0233 n.3)

avoids infringement for this reason based on the same testimony from TQP's

expert in Newegg's trial, and based on a broader claim construction, Newegg's

system cannot infringe under the "have been sent" construction given to the jury.

That claim requirement is simply not met by either system, regardless of which

construction is applied.

Further, although Newegg was entitled to JMOL based on its own trial

record and construction alone, once Judge Bryson entered summary judgment in

favor of Intuit, Newegg's right to JMOL then had the additional force of collateral

estoppel. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk

Contractors USA, Inc.*, 617 F.3d 1296, 1312 (Fed. Cir. 2010) (applying Fifth

Circuit law and finding noninfringement based on collateral estoppel where the

accused technology in the second case was materially identical to the

"noninfringing design" in the first case); *Reese v. Verizon Cal., Inc.*, 498 Fed.

Appx. 980, 982 (Fed. Cir. 2012) ("[C]ollateral estoppel in a patent case prevents a

plaintiff who previously litigated a claim that certain technology infringed its

patent (and lost) from taking 'another bite at the apple' by again asserting that the

same technology infringes the same patent.") (citing *Transocean*, 617 F.3d at

1312); *cf. Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)

(explaining that claim preclusion applies where "the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties that was resolved by a judgment on the merits").

The law of the regional circuit applies to matters like collateral estoppel, which are not unique to patent law. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). The Fifth Circuit applies collateral estoppel when the following four conditions are met:

> First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair.

*Id.* at 1315 (quoting *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)). Here, the issue in both the Intuit and Newegg cases is whether the exact same accused systems meet the same claim requirement, which plainly satisfies the first prong. *Transocean*, 617 F.3d at 1317; *Reese*, 498 Fed. Appx. at 982. The second prong is likewise satisfied because the parties extensively litigated the issue in the Intuit Case in three distinct rounds of briefing—Intuit's original summary judgment motion, Intuit's renewed summary judgment motion, and TQP's motion for reconsideration—with the briefs relying on considerable amounts of evidence and detailed argument. *See generally* A0200-50. Because Judge Bryson's entry of summary judgment was based

23

entirely on his conclusion that the "a new one of said key values . . . being produced each time" claim requirement was not met by Intuit's accused system, the third prong is also satisfied.  A0239.  And regarding the fourth prong, there are no special circumstances or equitable reasons not to apply the doctrine to preclude TQP from relitigating the same issue a second time—TQP had every opportunity to fully and fairly make its case, and it simply lost.  Because Judge Bryson's ruling collaterally estops TQP from continuing to contend that Newegg infringes, it is impossible for any judgment to be entered against Newegg by the district court, and judgment should be entered in Newegg's favor accordingly.

Finally, as this Court has recognized, principles of comity strongly encourage deference to prior decisions from district courts on identical issues, as is involved here.  *See In re Google Inc.*, 588 Fed. Appx. 988, 990 (Fed. Cir. 2014) ("Under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation.") (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  It would waste scarce judicial resources for Judge Gilstrap to conduct an entirely fresh adjudication of the very same issues that Judge Bryson already conclusively resolved.  *See Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) ("The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid

placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."). Judge Bryson's summary judgment ruling should be viewed as the final word from the district courts on whether the accused system infringes TQP's patent.

## III.    ISSUANCE OF THE WRIT IS APPROPRIATE

The All Writs Act broadly gives this Court the authority to "issue all writs necessary or appropriate in aid of [its] jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Excessive delay of judgment as in this case should be remedied via a writ of mandamus because such delay leaves litigants no other avenue for relief outside of a writ. *Cf. In re School Asbestos Litigation*, 977 F.2d 764, 792 (3d Cir. 1992) (holding that "a writ of mandamus is a proper remedy when a district judge arbitrarily refuses to rule on a summary judgment motion"); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("When a litigant's rights are materially prejudiced by the district court's mismanagement of a case, [the Courts of Appeals] must redress the abuse of discretion."); *United States v. Newman*, 456 F.2d 668, 671 (3d Cir. 1972) ("It is in the interest of justice that a decision on the propriety of a trial be reached as soon after it has ended as is possible, and that decision be not deferred until the trial's story has taken on the uncertainty and dimness of things long past."). And unreasonable delay of judgment especially counsels in favor of a writ of

mandamus where, as here, the issues requiring judicial resolution are simple and straightforward. *See In re Federal Computer Corp.*, Misc. Dkt. No. 307, 1991 U.S. App. LEXIS 31719, at *3-4 (Fed. Cir. June 19, 1991) (explaining that "the Board has a number of options to move this matter forward" and "although the delay has been only four months, the matter appears so simple that the delay is becoming unreasonable") (citing *In re Monroe Communications Corp.*, 840 F.2d 942, 945 (D.C. Cir. 1988) (holding that "[d]elay is measured by a 'rule of reason'")).

Newegg's petition does not depend on any finding of bad intent on the part of the district court in failing to resolve Newegg's JMOL motion, or even on a conclusion that the district court has actively decided not to rule on Newegg's JMOL motion. Newegg makes no such assertions. When unreasonable delay of judgment, by whatever cause, leads to undue prejudice and substantial harm that cannot be remedied by ordinary means, and where a party is clearly entitled to judgment, extraordinary writs can and should be issued to remedy the situation. As the maxim goes: "justice delayed is justice denied." This Court has a duty to act, under these exceptional circumstances, to remedy such failures by district courts to properly administer justice. *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-260 (1957) ("We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal

system.").   This petition for a writ of mandamus, reluctantly filed and sought, warrants such exceptional relief and intervention by this Court.

## CONCLUSION

For the foregoing reasons, Newegg respectfully requests that this Court issue a writ of mandamus directing the district court to enter JMOL of non-infringement.

Respectfully submitted,

Dated:  July 6, 2015

/s/ *Daniel H. Brean*
Kent. E. Baldauf, Jr.
Daniel H. Brean
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

Mark. A. Lemley
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Edward R. Reines
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Counsel for Appellant Newegg Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 6, 2015, the foregoing **PETITION FOR WRIT OF MANDAMUS** was electronically filed with the Court. A copy has been served on counsel for Respondent TQP Development, LLC via Federal Express upon the following:

> Marc Aaron Fenster
> Adam S. Hoffman
> RUSS AUGUST & KABAT
> 12424 Wilshire Boulevard
> Suite 1200
> Los Angeles, CA 90025
> Tel: (310) 826-7474
> Fax: (310) 826-6691
> mafenster@raklaw.com
> ahoffman@raklaw.com

A copy has also been served on the date above via Federal Express on:

> The Honorable Rodney Gilstrap
> U.S. District Court
> Sam B. Hall, Jr. Federal Building
> and United States Courthouse
> 100 East Houston Street
> Marshall, Texas 75670
> Tel: (903) 935-3868
> Fax: (903) 935-2295

An original and four hard copies and a PDF copy on disk, along with the required filing fee, of this Petition have been hand-delivered to the U.S. Court of Appeals for the Federal Circuit on the date indicated above.

> /s/ *Daniel H. Brean*
> Daniel H. Brean
> *Counsel for Newegg Inc.*